UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———————————

ROBERT W. WAGNER,

        Plaintiff,                         Case No.  1:15-CV-0558

v.

                                            HON. ROBERT J. JONKER

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant,

———————————————————/

## OPINION

        This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner).  Plaintiff Robert Wagner seeks review of the Commissioner's decision denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

### STANDARD OF REVIEW

        The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process.  *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998).  The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.

*See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance.  *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted).  It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).  In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight.  *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984).  The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 34 years of age on the date of the Administrative Law Judge's (ALJ) decision.  (PageID.67, 96.)  He obtained a GED, and was previously employed as a construction worker and a general foundry worker.  (PageID.72, 87.)  Plaintiff applied for benefits on July 3,

2012, alleging that he had been disabled since June 1, 2003, due to back problems and migraines.[1]

(PageID.96, 106, 178–92.)  Plaintiff's applications were denied on September 11, 2012, after which

time he requested a hearing before an ALJ.  (PageID.122–31.)  On August 5, 2013, Plaintiff appeared

with his counsel before ALJ Douglas Johnson for an administrative hearing with testimony being

offered by Plaintiff and a vocational expert (VE).  (PageID.67–94.)  In a written decision dated

November 21, 2013, the ALJ determined that Plaintiff was not disabled.  (PageID.48–66.)  On

February 27, 2015, the Appeals Council declined to review the ALJ's decision, making it the

Commissioner's final decision in the matter.  (PageID.39–44.)  Plaintiff subsequently initiated this

action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating

disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2]  If the Commissioner can make a

---

[1]At the administrative hearing, Plaintiff's counsel indicated that Plaintiff was amending his alleged onset date and subsequently amended the date to February 3, 2011.  (PageID.212.)  The ALJ, however, rejected the new onset date, noting there was no basis for amending it.  (PageID.54.)

[2]1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4.  If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5.  If an individual's impairment is so severe as to preclude the performance of past

3

dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC).  *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).  At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*

ALJ Johnson determined Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 1, 2003, the alleged onset date.  (PageID.53.)  At step two, the ALJ determined Plaintiff had the following severe impairments: (1) lumbar spondylosis, and diagnosis of degenerative disc disease; and (2) bilateral plantar fasciitis.[3]  (PageID.54.)  At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments.  (PageID.57.)  At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except lift and/or carry up to 20 pounds occasionally and

---

work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

[3]The ALJ noted that the evidence supporting the severe impairment of bilateral plantar fasciitis is dated after Plaintiff's date last insured for purposes of his DIB claim.

> 10 pounds frequently; stand and/or walk for 2 hours during an 8 hour workday; sit for 6 hours in an 8 hour workday; requires option of alternating between sit and stand every 20 minutes; can occasionally stoop, kneel, crouch, crawl and climb stairs; no exposure to more than moderate levels of atmospheric pollutants or extremes of temperature and/or humidity.

(PageID.57.)   Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any past relevant work.  (PageID.61.)   At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy which Plaintiff could perform given his limitations.  *See Richardson*, 735 F.2d at 964.  The VE testified that there existed approximately 23,000 jobs in the state of Michigan and 700,000 jobs in the nation that an individual similar to Plaintiff could perform.  The VE specifically identified the positions of production worker, inspector, and machine operator as those positions Plaintiff could perform.  (PageID.88–89.)  This represents a significant number of jobs.  *See Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988).

Accordingly, the ALJ concluded that Plaintiff was not disabled at any point from June 1, 2003, through November 21, 2013.  (PageID.63.)

### DISCUSSION

Plaintiff's brief failed to comply with the Court's Notice of August 7, 2015, that "Plaintiff's initial brief must contain a Statement of Errors, setting forth the specific errors of fact or law upon which Plaintiff seeks reversal or remand."[4]  (PageID.950.)  Because Plaintiff's counsel failed to enumerate the claims as directed, the Court must frame the specific errors of fact or law

---

[4]Plaintiff's counsel is advised that future briefs failing to provide a Statement of Errors as directed by the Court may be stricken.

upon which Plaintiff seeks reversal or remand. The Court gleans the following claims from Plaintiff's brief:

1.   Plaintiff meets the requirements of Listing 1.04, and the ALJ was required to obtain a medical opinion regarding whether Plaintiff equaled a Listing;

2.   By rejecting all opinions in the record, the ALJ impermissibly substituted his own opinion in formulating the RFC;

3.   The ALJ violated the treating physician rule;

4.   The RFC did not account for Plaintiff's limitations in concentration, persistence, and pace; and

5.   The ALJ erred in assessing Plaintiff's credibility.

The Court will discuss the issues below.

**1.**

Plaintiff first contends that he meets the requirements of Listing 1.04. 20 C.F.R. Pt. 404, Subpt. P, App. 1. The Plaintiff bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. §§ 404.1525(d); 416.925(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir.1987). *See, e.g., Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004)

("[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency"). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(d); 416.920(d).

Here, Plaintiff contends that he meets the requirements of Listing 1.04, which provides as follows:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesi, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04.  The ALJ found that Plaintiff's impairment failed

to meet Listing 1.04 because:

> Many of [Plaintiff's] examinations have shown however that he is
> able to ambulate independently and he does not require the use of a
> walker, cane or other assistive device.  The 3/28/2011 CT scan
> revealed some foraminal disc protrusion, but there is no evidence of
> it impinging on the L4 nerve root.  He also had the EMG study and
> this confirmed no evidence of radiculopathy, plexopathy or peripheral
> neuropathy.  He does not have the clinical findings required for listing
> section 1.04, and the progress reports in file do not show the loss of
> function specified either.

(PageID.57) (internal citations omitted).

The ALJ's conclusion is supported by substantial evidence.  As for Listing 1.04B and

1.04C, there is no evidence, and Plaintiff does not allege, that he has spinal arachnoiditis, nor does

Plaintiff allege an inability to ambulate effectively.  As for Listing 1.04A, the ALJ correctly noted

the absence of evidence supporting nerve root compression.  The March 28, 2011 CT scan showed

a foraminal disc protrusion on the right, but no impingement on the L4 nerve root.  (PageID.481.)

Similarly, as the ALJ noted, the EMG study did not reveal positive results.  (PageID.481.)  Plaintiff

argues he meets the requirements of the listing by noting that on March 23, 2011, Dr. Derek Lado

found that there was "electrodiagnostic evidence of increased insertional activity . . ."  The doctor

noted that the evidence "may represent early nerve root irritation such as radiculitis, or an early

radiculopathy." (PageID.415.)  However, as Plaintiff admits, Dr. Lado concluded "[t]his is not a

definitive finding."  (PageID.415.)  Moreover, as the Commissioner adds, Dr. Lado ordered

additional testing which, as noted above, revealed no evidence of impingement.  (PageID.415, 481.)

Plaintiff also relies on a December 3, 2012 CT scan.  That scan revealed a "[s]mall right lateral disc

protrusion L4/5 mildly narrows the inferior aspect of the foramen and abuts the exiting right L4

nerve root." (PageID.470.)  There was no change from the March 2011 CT scan.  (PageID.483.)

Plaintiff appears to make the argument that a disc protrusion abutting a nerve is evidence of nerve

root compression.  Plaintiff provides no authority stating such however, and at least one court has

held such to be insufficient. *Adams v. Comm'r of Soc. Sec.*, No. 13–11132, 2014 WL 897381, at *9

n.5 (E.D. Mich. Mar. 6, 2014) (adopting Report and Recommendation).  Plaintiff notes that Plaintiff

could not undergo an MRI due to a lack of insurance and alleged metal in his eye, and further argues

that the MRI might reveal, better than a CT scan, whether Plaintiff has a nerve root impingement.

That may be the case, and the Court has no reason to doubt that it is so, but Plaintiff must provide

more than mere speculation to satisfy his burden at this step.  To satisfy his burden at Step 3, a

claimant must show that his impairment meets all of the criteria in a listing. *See Sullivan v. Zebley*,

493 U.S. 521, 531 (1990); *Harris v. Barnhart*, 356 F.3d 926, 928 (8th Cir. 2004).  This, Plaintiff has

not done, nor can he.  Accordingly, Plaintiff does not meet Listing 1.04A.

       Plaintiff claims, however, that the ALJ erred by failing to consult a medical expert

before determining Plaintiff's back impairment did not equal Listing 1.04.  (PageID.539–42.)

Because Plaintiff's claim was denied on initial review under the "single decisionmaker" (SDM)

model, the record does not contain a finding of fact made by a medical consultant.[5]  Plaintiff did not

make any argument in his pre-hearing brief that he met or equaled the requirements of Listing 1.04.

(PageID.268–69.)  Similarly, he did not present any argument claiming that the ALJ needed to

consult a medical expert before making a determination that Plaintiff's back impairment did not meet

---

[5]Designed to streamline the administrative process, under the SDM approach a single decisionmaker assumes primary responsibility for processing a claimant's application, including the initial disability determination. 20 C.F.R. §§ 404.906, 416.1406; *see White v. Comm'r of Soc. Sec.*, No. 12–cv–12833, 2013 WL 4414727, at * 8 (E.D. Mich. Aug. 14, 2013).

or equal the requirements of Listing 1.04.  (PageID.268–69.)  The hearing transcript is likewise devoid of any argument that Plaintiff suffered from any impairment approaching listing-level severity or that the ALJ should consult an expert.  (PageID.69–93.)  Plaintiff thus argues for the first time in this appeal that the ALJ erred by failing to consult a medical expert before determining that his back impairment did not equal Listing 1.04

Plaintiff had the burden at step three of the sequential analysis to establish that he met or equaled the requirements of Listing 1.04.  Plaintiff was required to prove "'medical findings equal in severity to *all* the criteria for the listed impairment.'"  *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in original)).  It was not the ALJ's burden.  *See Lusk v. Commissioner*, 106 F. App'x 405, 411 (6th Cir. 2004) (Plaintiff "must present specific medical findings that his impairment meets the applicable impairment or present medical evidence that describes how his impairment is equivalent to a listed impairment."); *Shinaver v. Comm'r of Soc. Sec.*, No. 1: 14–cv–727, 2015 WL 4644482, at * 2 (W.D. Mich. Aug. 4, 2015) (Plaintiff "bore the burden of providing medical evidence to support his equivalency argument.").

Even assuming that Plaintiff had presented medical evidence describing how his impairment was equivalent to Listing 1.04, such an opinion would have been entitled to consideration, but not any particular weight.  *See* 20 C.F.R. §§ 404.1527(d)(2), (3).  Whether an impairment equals a listed impairment is an administrative issue reserved to the Commissioner, not a medical determination. *See Zaph v. Comm'r of Soc. Sec.*, No. 97–3496, 1998 WL 252764, at * 2 (6th Cir. May 11, 1998) ("[T]he issue of whether an individual's impairment is equivalent to a listed impairment is an administrative finding, not a medical one."); *see also Hyde v. Comm'r of Soc. Sec.*, No. 1:08–cv–1013, 2010 WL 1131956, at * 6 (W.D. Mich. Mar. 1, 2010).

10

The ALJ was not required to consult with a medical expert before making his finding that Plaintiff did not meet or equal the requirements of a listed impairment. *See Weldon v. Comm'r of Soc. Sec.*, No. 1:13–cv–402, 2014 WL 4956229, at * 5 (W.D. Mich. Oct. 2, 2014). Federal regulations allow an ALJ to call a medical expert to explain medical records but do not require him to do so. 20 C.F.R. §§ 404.1527(e)(2)(iii); *see Weldon*, 2014 WL 4956229, at * 5; *O'Neill v. Colvin*, No. 1:13–cv–867, 2014 WL 3510982, at *17–18 (N.D. Ohio July 9, 2014); *Wredt ex rel. E.E. v. Colvin*, No. 4:12–cv–77, 2014 WL 281307, at * 7 (E.D. Tenn. Jan.23, 2014).

Despite the above authority, Plaintiff claims that remand is required because the SDM model is irreconcilable with SSR 96-6p's direction that "longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight." (PageID.540); *see* Policy Interpretation Ruling for Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians and Psychologists at the Administrative Law Judge and Appeals Council Levels of Administrative Review; Medical Equivalence (SSA July 2, 1996) (reprinted at 1996 WL 374180, at *3).[6] This issue was recently addressed by Magistrate Judge Green in *Garza v. Commissioner of Social Security*, No.

---

[6] SSRs, or Social Security Rulings, purport to interpret applicable regulations. *See Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 (6th Cir. 2010). "Social Security Rulings do not have the force and effect of law, but are "binding on all components of the Social Security Administration" and represent "precedent final opinions and orders and statements of policy and interpretations" adopted by the Commissioner. 20 C.F.R. § 402.35(b)(1). In *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 549 (6th Cir. 2004), the court refrained from ruling on whether Social Security Rulings are binding on the Commissioner in the same way as Social Security Regulations, but assumed that they are." 628 F.3d at 272 n.1.

1:14-cv-1150, 2015 WL 8922011 (W.D. Mich. Nov. 25, 2015).  Recognizing the conflicts between

reviewing courts on the issue, Judge Green determined that as between SSR 96-6p and regulations

that "plainly do not require" an ALJ to consult with an expert, the regulations authorizing the SDM

model must control.  *Id.* at *7–9 (citing *Paxton v. Sec'y of Health & Human Servs.,* 856 F.2d 1352,

1356 (9th Cir. 1988).  Accordingly Judge Green held the ALJ did not err in not consulting a medical

expert. *Id.* at *9.  The Court finds Judge Green's decision to be a well reasoned analysis of the

applicable regulations and rulings.  The decision is consistent with the great weight of authority,

cited above, finding that the burden at step 3 rests squarely on Plaintiff's shoulders.  The ALJ did

not err, therefore, in making his determination at step 3 without consulting a medical expert.  *See*

*Timm v. Comm'r of Soc. Sec.*, No. 10-CV-10594, 2011 WL 846059, at *4 (E.D. Mich. Feb. 14,

2011), *report and recommendation adopted*, No. 10-CV-10594, 2011 WL 845950 (E.D. Mich.

Mar. 8, 2011).

Finally, Plaintiff argues the ALJ failed to consider Plaintiff's obesity "when

addressing whether Plaintiff met or equaled" Listing 1.04.  (PageID.542.)  The Court disagrees.

Plaintiff's obesity was discussed at several steps in the evaluation.  The ALJ explicitly found

Plaintiff's obesity to be non-severe, noting that it "has not caused any additional complications or

made the pain symptoms worse." (PageID.55.)  Later in the discussion, the ALJ concluded that the

treatment records regarding Plaintiff's obesity did not support any functional limitations.

(PageID.58.)  SSR 02-01p, cited by Plaintiff, cautions that the administration "will not make

assumptions about the severity or functional effects of obesity combined with other impairments.

Obesity in combination with another impairment may or may not increase the severity or functional

limitations of the other impairment. We will evaluate each case based on the information in the case

record." SSR 02–01p, 2000 WL 628049 at *6.  In other words, the ruling does nothing to relieve Plaintiff of the burden of marshaling competent medical opinion and evidence to show specifically how his obesity exacerbated his other impairments, or interacted with them, to render him incapable of all suitable work.

In the context of judicial review of the ALJ's decision, Plaintiff had the burden of showing specifically how his obesity, in combination with other impairments, limited his ability to a degree inconsistent with the ALJ's RFC determination. Plaintiff's argument fails to point to evidence and argument, submitted to the ALJ, by which he met that burden.  And, contrary to Plaintiff's assertions, "It is a mischaracterization to suggest that Social Security Ruling 02–01p offers any particular procedural mode of analysis for obese disability claimants." *Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006), followed by *Webster v. Comm'r of Soc. Sec.*, 2008 WL 207578, *3 and *5 (W.D. Mich. Jan. 24, 2008); *see also Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011).  For all the above reasons, Plaintiff's first claim of error is rejected.

## 2.

Plaintiff next claims that by rejecting the medical opinions in the recorrd, the ALJ developed an RFC that was not based on any medical opinion, and impermissibly substituted his own lay opinion in the RFC determination.  (PageID.543–44.)  When determining a claimant's RFC, "[i]t is well established that the ALJ may not substitute his medical judgment for that of the claimant's physicians." *Brown v. Comm'r of Soc. Sec.*, No. 1:14–CV–236, 2015 WL 1431521, *7 (W.D. Mich. Mar. 27, 2015) (*citing Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006)); *see Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (*quoting Rohan v. Charter*, 98 F.3d 966, 970 (7th Cir. 1996)) ("ALJs must not succumb to the temptation to play doctor and

13

make their own independent medical findings."). However, when evaluating the claimant's RFC, the ALJ is not required to base his or her RFC findings entirely on a physician's opinion. *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015); *see Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) ("[T]o require the ALJ to base her RFC finding on a physician's opinion, 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.'"). "[A]n ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). An RFC determination is not the duty of a claimant's physicians; instead, this determination is exclusively within the purview of the Commissioner. *Edwards v. Comm'r of Soc. Sec.*, 97 F. App'x 567, 569 (6th Cir. 2004). Accordingly, after the ALJ provided good reasons for giving less than controlling weight to the opinions of Plaintiff's physicians, the ALJ did not need to seek out another physician's opinion. *See Muscott v. Colvin*, No. CV 14-13890, 2015 WL 7248670, at *4 (E.D. Mich. Oct. 29, 2015). Upon review of the medical and non-medical evidence on record, it is clear that there is substantial evidence to support the ALJ's RFC determination limiting Plaintiff to a range of light work. (PageID.57–61.) Therefore, Plaintiff's claim that the ALJ improperly made an RFC finding that is unsupported by the evidence of record fails.

**3.**

Plaintiff next claims the ALJ failed to properly evaluate two opinions under the treating physician rule. (PageID.544–46.) The Court disagrees.

14

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (*citing Shavers*, 839 F.2d at 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (*quoting Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not

15

well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment.  *Gayheart*, 710 F.3d at 376–77.

> A.    *Dr. Erica Elsing*

Plaintiff first argues the ALJ erred in considering the opinion of Dr. Erica Elsing. (PageID.513–17, 544–545.)  The flaw in Plaintiff's argument, however, is that the opinion was not signed by Dr. Elsing, but rather was signed by Ms. Susan Lance, a certified physician's assistant. (PageID.517.)  Contrary to Plaintiff's assertion, opinions of physicians' assistants are not subject to the treating physician rule.   A physician's assistant is not an acceptable medical source. *See* 20 C.F.R. 416.913(a), (d)(1); *see also Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 397–98 (6th Cir. 2014); *see also Jones v. Colvin*, No. 7–14–cv–36, 2014 WL 4716517, at * 4 (E.D. Ky. Sept. 22, 2014) ("The Social Security regulations make clear that physician's assistants are not 'acceptable medical sources,' but rather 'other sources[.]'"). Because Ms. Lance was not an acceptable medical source, the ALJ was not required to provide "good reasons" for the weight given to her opinion under 20 C.F.R. § 416.927(c)(2). *See, e.g., Hughes v. Comm'r of Soc. Sec.*, No. 1:11–cv–66, 2015 WL 4076931, at *8 (W.D. Mich. July 6, 2015); *Gordon v. Colvin*, No. 2:14–cv–213, 2015 WL 350617, at *6 (S.D. Ohio Jan. 26, 2015) (collecting cases); *Borden v. Comm'r of Soc. Sec.*, 1:13–cv–2211, 2014 WL 7335176, at *9 (N.D. Ohio Dec.19, 2014) ("Other source opinions are "neither entitled to controlling weight, nor subject to the 'good reasons' requirement of the treating physician rule.").

Under SSR 06–3p, opinions from other medical sources, such as nurse practitioners, physicians' assistants and therapists "are important and should be evaluated on key issues such as

impairment severity and functional effects, along with other relevant evidence in the file."  See SSR 06–3p, 2006 WL 2329939, at *3 (Aug. 9, 2006).  The ALJ evaluated and then properly discounted Ms. Lance's opinions consistent with SSR 06–3p.  Accordingly, Plaintiff's claim of error is denied.

> B.     Dr. Derek Lado

On September 3, 2013, Dr. Lado opined that Plaintiff was limited to an extent greater than that recognized by the ALJ.  (PageID.518–23.)  Among other things, the doctor found that Plaintiff could only stand or walk for one hour total in the workday, and sit for no more than four hours total in the work day.  (PageID.520.)  The ALJ assigned the opinion "very minimal weight." (PageID.61)  It is undisputed the opinion qualifies as a treating physician opinion, and accordingly the ALJ was required to provide "good reasons" for giving the opinion less than controlling weight.

While the ALJ's discussion of the opinion perhaps could have been better organized, it is evident the ALJ provided good reasons for rejecting it. The ALJ noted that Dr. Lado's extreme opinion regarding Plaintiff's back impairment was "without support from the clinical notes." (PageID.58.) The ALJ proceeded to identify specific portions of the record that he found were inconsistent with the opinion.  For example, on February 10 and 24, 2011 treatment notes reflected that Plaintiff had a normal gait as well as normal deep tendon reflexes. (PageID.349, 355.) An EMG study on March 23, 2011, found no definitive evidence of lower extremity radiculopathy. (PageID.415.)  A follow up CT scan found no evidence of impingement.  (PageID.415, 481.) Injections helped Plaintiff manage his pain and he was found to be "doing much better." (PageID.412, 485.) On November 1, 2012, he had a normal gait, and was able to get up on his toes and heals without difficulty. He had a negative straight leg raise, and 5/5 motor strength.

(PageID.485.).   The ALJ reasonably concluded that these notes were inconsistent with the restrictions offered by Dr. Lado.  Accordingly, the ALJ did not violate the treating physician rule.

**4.**

Plaintiff contends that the ALJ found that he had "moderate" limitations in concentration, persistence, and pace, and that the ALJ erred because this limitation was not reflected in the RFC.[7]  (PageID.547.). Plaintiff's contention is without merit.  The ALJ made this finding at step three of the sequential evaluation when he considered whether Plaintiff met the "paragraph B" requirements of various listed mental impairments (12.02, 12.03, 12.04 and 12.06). (PageID.56–57.) This finding was not the RFC finding made at step four of the evaluation. *See Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (RFC is determined at step four of the sequential evaluation); 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00.A. ("RFC is a multidimensional description of the work-related abilities you retain in spite of your medical impairments. An assessment of your RFC complements the functional evaluation necessary for paragraphs B and C of the listings by requiring consideration of an expanded list of work-related capacities that may be affected by mental disorders when your impairment(s) is severe but neither meets nor is equivalent in severity to a listed mental disorder"). As the court explained in *Pinkard v. Commissioner of Social Security Administration*, No. 1:13–cv–1339, 2014 WL 3389206 (N.D. Ohio July 9, 2014):

> Plaintiff argues that the ALJ erred in concluding that Plaintiff had moderate difficulties in concentration, persistence, and pace, while failing to include an appropriate limitation for these difficulties in the RFC findings . . . Plaintiff refers to the ALJ's paragraph B findings in his evaluation of Plaintiff's depression under 12.04 of the listing of

---

[7]As the Commissioner notes, the ALJ initially found Plaintiff had moderate difficulties in this area, but then concluded that those limitations were only mild.  (PageID.56.)  Even if the ALJ had concluded the Plaintiff had moderate limitations, however, he did not err.

> impairments [ ]. 20 C.F.R. pt. 404, subpt. P, app. 1 Sections 12.04,
> 12.05, 12.06. However, the ALJ does not have to include paragraph
> B finding[s] in his RFC finding. Paragraph B findings under the
> listings are findings at step three of the sequential evaluation process,
> and are not RFC findings pertaining to steps four and five of the
> sequential evaluation process. 20 C.F.R. pt. 404, subpt. P, app. 1,
> Section 12.00. Hence, the ALJ was correct in finding that Plaintiff
> had moderate limitations in evaluating her mental impairment under
> the listings at step three of the sequential evaluation process, and in
> not including a "moderate limitation in concentration, persistence,
> and pace" in his residual functional capacity finding at steps four and
> five.

*Pinkard*, 2014 WL 3389206 at *10.  The Court agrees with the above reasoning and accordingly

finds that this claim of error should be denied.

## 5.

Plaintiff finally argues the ALJ erred in assessing his subjective allegations.  At the

hearing, Plaintiff testified that he could not work due to numbness in his feet, pain behind his knees,

and migraines.  (PageID.74–75.)  Lifting, walking up stairs, twisting, and bending, made the pain

worse.  (PageID.76.)  Plaintiff also testified that three times a week he would get migraines that

would incapacitate him for the rest of the day.  (PageID.78–79.)  Plaintiff argues the ALJ should

have incorporated these limitations into the RFC.

An ALJ may discount a claimant's credibility where the ALJ "finds contradictions

among the medical records, claimant's testimony, and other evidence."  *Walters v. Comm'r of Soc.

Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  "It [i]s for the [Commissioner] and his examiner, as the

fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony."

*Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (*quoting Myers v. Richardson*, 471

F.2d 1265, 1267 (6th Cir. 1972)).  The court "may not disturb" an ALJ's credibility determination

"absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  The threshold

for overturning an ALJ's credibility determination on appeal is so high that, in recent years, the Sixth

Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne*

*v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not

disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case

anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Comm'r of*

*Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations

regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers*

*v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007).

Plaintiff first argues the ALJ erred in discounting his credibility based on his activities

of daily living that occurred after his initial disability onset date of June 1, 2003, but before his

desired amended onset date of February 3, 2011. As noted above, the ALJ determined there was no

basis for amending the alleged onset date, as "he has not had any apparent deterioration in his

residual functional capacity based upon this amended onset date. For example, he did not suffer any

additional medical complications or any new type of injury on 2/3/2011. The claimant did not attain

a different age category, and he did not present any evidence to support this amended onset date."

(PageID.54.) "The starting point in determining the date of onset of disability is the individual's

statement as to when disability began." SSR 83-20, 1983 WL 31249, at *2 (1983). But it is just a

starting point. Rather, it is the "medical evidence [that] serves as the primary element in the onset

determination." *Id.* "[T]he established onset date must be fixed based on the facts and can never

be inconsistent with the medical evidence of record." *Id.* at 3. Based on the record, the Court finds

the ALJ did not err in denying Plaintiff's motion to amend his onset date. The ALJ noted that

Plaintiff's injury dated back further than the amended date, and Plaintiff did not present evidence

showing that he experienced any significant change in condition.[8] *See Jennings v. Comm'r of Soc. Sec.*, No. 1:12CV3027, 2013 WL 6019129, at *8 (N.D. Ohio Nov. 13, 2013).

Accordingly, it was not in error for the ALJ to note that Plaintiff's activities of daily living prior to February 3, 2011, were inconsistent with his allegations. On November 10, 2006, Plaintiff told his doctor that he performed heavy lifting. He helped his dad "tear down cars" and performed yard work. Despite these activities, he did not report any low back pain or neck pain. (PageID.292.) Even if the ALJ should not have considered these activities, however, at the hearing Plaintiff admitted to going fishing and attending to church–activities that are inconsistent with his allegations. (PageID.79–80.)

The ALJ also remarked on other reasons for not fully crediting Plaintiff's testimony, Despite Plaintiff's complaints regarding the severity of his migraines, the ALJ found that the record did not "contain any significant evidence to corroborate his allegation." (PageID.55.) This conclusion is supported by substantial evidence. On March 22, 2006, Plaintiff met with Dr. Daniel Cunningham for complaints of worsening migraines. He attributed them to anxiety. (PageID.301.) Plaintiff was treated with medication, and told to follow up in a month. (PageID.301.) On April 21, 2006, Plaintiff stated he had migraines three times a week. Medication took the edge off, he experienced side effects with one of his medications, and continued to experienced photophobia, phonophobia, and nausea. (PageID.300.) The doctor kept Plaintiff on the medication that he could tolerate, and also applied osteopathic manipulative treatment (OMT).[9] On November 10, 2006, it

---

[8]Indeed, it appears that part of the reason Plaintiff wished to change his onset date was that he had since obtained insurance. (PageID.83.)

[9] OMT "involves using the hands to diagnose, treat, and prevent illness or injury. Using OMT, [an] osteopathic physician will move [a patient's] muscles and joints

was noted that Plaintiff "responds well to OMT" and he was prescribed physical therapy. (PageID.291–92.)  On January 12, 2007, however, Plaintiff was described as not being able to tolerate OMT.  Dr. Cunningham suggested a chiropractor, and noted that Plaintiff had seen some improvement with physical therapy.  (PageID.287.)  Thereafter while migraines were listed as one of Plaintiff's complaints, it does not appear he sought continued treatment for his migraines.  The ALJ correctly noted that such is inconsistent with the severity of Plaintiff's complaints.  Finally, the ALJ noted that Plaintiff's complaints were inconsistent with his reports of relief from treatment. (PageID.60.)  For example, on July 3, 2013, he told a physician's assistant at Michigan Pain Consultants that following a radiofrequency ablation procedure, he had a 75% reduction of pain in his right lower back and lower extremity.  (PageID.453.)  Plaintiff stated he also had relief when taking Lyrica, and that his activity had improved.  (PageID.453.)  While Plaintiff may have subsequently claimed otherwise, it was not in error for the ALJ to identify this statement as being inconsistent with Plaintiff's testimony.  All this provides substantial evidence supporting the ALJ's decision to discount the Plaintiff's subjective allegations.  Accordingly, this claim of error is rejected.

**CONCLUSION**

For the reasons set forth herein, the Commissioner's decision will be **AFFIRMED.** A separate judgment shall issue.

Dated:      May 5, 2016                       /s/ Robert J. Jonker
                                              ROBERT J. JONKER
                                              CHIEF UNITED STATES DISTRICT JUDGE

_____

using techniques including stretching, gentle pressure and resistance." *Osteopathic Manipulative Treatment*, AMERICAN OSTEOPATHIC ASSOCIATION, http://www.osteopathic.org/osteopathic-health/treatment/Pages/default.aspx.